Hillsborough-northern judicial district
No. 93-700

### SANDRA WALTON, AS PARENT AND NEXT FRIEND OF JULIE WALTON

v.

### CITY OF MANCHESTER

November 6, 1995

*Moquin & Daley, P.A.*, of Manchester (*Joni N. Esperian* on the brief, and *Richard C. Moquin* orally), for the plaintiff.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Cindy Robertson* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiff, Sandra Walton, as parent and next friend of Julie Walton, appeals the Superior Court (*Arnold*, J.) denial of her motion for a new trial. On appeal, she argues that she is entitled to a new trial because of certain statements made by counsel for the defendant, City of Manchester (city), during closing argument. We reverse and remand.

In January 1988, Julie Walton was a student and cheerleader at Southside Junior High School in Manchester. A teacher at the school, David Danielson, was the volunteer coach of the cheerleading squad. Despite having no particular training or experience in the area, Danielson had agreed to coach the team after no one else volunteered to do so. On January 11, 1988, during a break in a practice session, Julie Walton fell while attempting to complete a back handspring and injured her arm. Danielson was not present at the time of the fall.

The plaintiff sued the city, claiming that the city was negligent in failing to hire a properly trained cheerleading coach. The plaintiff did not sue Danielson. During closing argument, counsel for the city stated:

> [Mr. Danielson] was doing all of this on a volunteer basis. I stood there and I said to him: "So why would you do it?"
>
> And I am sure in the last couple of days he has asked himself that same question more than once—"Why in the heck did I do this? *Look where I am now.*"
>
> But you know why he did it and he told you why he did it. He did it so the girls could have a squad and he did it for the girls. He did it for the kids.
>
> . . . .
>
> If you find against the City of Manchester *and in essence against Mr. Danielson and you find that what he did was wrong*, you are going to be sending a message to every teacher and volunteer who helps with sports at any level, *because they could be responsible* if a child gets hurt while in their care or while they are coaching.
>
> It is interesting that former President Bush last year . . . made a comment in one of his speeches. I will quote it because I thought it is this case. He stated that "lawsuits in this country have become so widespread . . . ."

(Emphasis added.) At this point counsel for the plaintiff objected, stating that counsel for the city was "speculating on lawsuits in general," and that she was "appealing to the jury's sympathy." After the court overruled the objection, counsel for the city continued:

> He stated that "lawsuits in this country have become so widespread that *even ma and pa's are afraid to coach little league*." And that is what this case is about.

(Emphasis added.) Counsel for the plaintiff then renewed his objection, which was again overruled. Counsel for the city proceeded:

> But this case is not about money for Julie. This case is about who loses if you return a verdict in favor of Julie and you send a message to the community *that what Mr. Danielson did in this case was wrong and if you volunteer and if a kid gets injured you could be spending the next couple of days just where he has been spending it.*
>
> The only ones who lose in that situation are the kids because, as Mr. Danielson said, he wouldn't do this again and you are not going to have all those programs that are provided only because people volunteer.
>
> The kids who are taking advantage of those programs are taking advantage of them because of volunteers. You would have no more cheerleading like it was set up at Southside Junior High.
>
> You would have no more Sunday night pickup basketball games in the high school gym. *You would have no more "Pop" Warner–*

(Emphasis added.) Counsel for the plaintiff once more renewed his objection, which the trial court noted.

In its final charge to the jury, the trial court included several instructions relating to the jury's duty to decide the matter impartially. Specifically, the court gave an instruction recommended in NEW HAMPSHIRE CIVIL JURY INSTRUCTION 2.2, the "Role of the Jury," stating, "You must not decide facts on the basis of any sympathy, prejudice, bias or fear or favor." In addition, the court charged the jury that its "responsibility is to decide what the facts are and to reach a verdict on the evidence and the law without sympathy, prejudice, fear or favor for or against any party."

After the jury decided in the defendant's favor, the plaintiff unsuccessfully moved for a new trial. This appeal followed.

The plaintiff argues that the trial court erred in denying her motion for a new trial because the statements made by counsel for the city during closing argument (1) deprived her of a fair and impartial jury as guaranteed by the State and Federal Constitutions, (2) constituted an impermissible "golden rule" argument, and (3) were not supported by evidence adduced at the trial. The decision to grant or deny a party's motion for a new trial is within the trial court's discretion, and we will not reverse the trial court's ruling absent an abuse of that discretion. *Hodgdon v. Weeks Mem. Hosp.*, 128 N.H. 366, 368, 515 A.2d 1199, 1200 (1986).

■ The plaintiff contends that she is entitled to a new trial because the city's closing argument constituted an impermissible "golden rule" argument. *See Millen v. Miller*, 308 A.2d 115, 117 (Pa. Super. Ct. 1973). A "golden rule" argument is made when counsel urges jurors to put themselves in a particular party's place, *Klein v. Herring*, 347 So. 2d 681, 682 (Fla. Dist. Ct. App. 1977), or into a particular party's shoes. Courts generally condemn these arguments because they encourage the jury "to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988); *see* 58 AM. JUR. 2D *New Trial* § 180 (1989).

■ We have never addressed specifically the propriety of "golden rule" arguments and need not do so today. The argument complained of did not ask the jurors to put themselves in the shoes of any party; rather, the argument asked members of the jury to consider the effect of a plaintiff's verdict on a nonparty, Danielson, on themselves, and on volunteerism in general.

Although we conclude that this did not constitute a "golden rule" argument, we do conclude that the argument, without correction by the trial court, mandates a reversal.

> [W]e do not expect advocacy to be devoid of passion . . . . But jurors must ultimately base their judgment on the evidence presented and the natural inferences therefrom. Thus, there must be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice.

*Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978). During closing argument, counsel "may not appeal to passion, prejudice or sympathy in a way not supported by the evidence." 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1537, at 276-77 n.29 (1984). For example, the general rule is "that the unnecessary mention of insurance is reversible error."

*Angelowitz v. Nolet*, 103 N.H. 347, 349, 172 A.2d 103, 105 (1961); *see* N.H. R. EV. 411. Similarly, courts will grant a new trial "where counsel attempts to appeal to the sympathies, passions, and prejudices of jurors grounded in race or nationality," by reference to the opposing party's religious beliefs or lack thereof, or by reference to a party's social or economic condition or status. 58 AM. JUR. 2D *New Trial* § 171 (collecting cases).

██ The plaintiff essentially contends that the city's presentation of Danielson as the "true defendant," when he had not been named personally in any suit, was a blatant appeal to the personal sympathies and biases of members of the jury. We agree. Indeed, certain remarks seem aimed specifically to rouse the personal sentiments of those jurors with children who benefit from the service of volunteers, such as the threat of the demise of little league, and the end of "Sunday night pickup basketball games in the high school gym . . . [and] 'Pop' Warner." Other elements seem aimed specifically at those who volunteer: "if you volunteer and if a kid gets injured you could be spending the next couple of days just where he has been spending it."

"It is well settled that counsel may not argue facts that have not been introduced into evidence." *State v. Brinkman*, 136 N.H. 716, 720, 621 A.2d 932, 935 (1993) (quotation and brackets omitted). This basic premise supports the common rule that statements and arguments that appeal to the emotions or prejudices of jurors may constitute grounds for a new trial when the statements or arguments take the form of counsel's presentation of facts which have not been introduced in, or are not fairly inferable from, evidence at trial. *E.g.*, *McRae v. Forren*, 428 P.2d 129, 131-32 (Ariz. Ct. App. 1967). In *Warner v. Rossignol*, 538 F.2d 910 (1st Cir. 1976), for example, the First Circuit held that persistent references to facts not in evidence made during closing argument in a negligence action were "calculated to inflame the jury," and "so prejudicial as to require a new trial." *Id.* at 911.

 Danielson was not a defendant in the instant case and has not been named as a defendant in any other case arising out of Julie Walton's accident. Reference to him as the "true defendant" was impermissible. Further, we cannot imagine by what theory the defendant would have been able to introduce evidence of former President Bush's speech, relating to "lawsuits in this country . . . becom[ing] so widespread that even ma and pa's are afraid to coach little league," or how such a statement "can reasonably be inferred from the evidence [that was] presented." *Brinkman*, 136 N.H. at 720, 621 A.2d at 935. We can imagine, however, what impact such a

statement was calculated to make on the jury, and what impact the statement surely did make on the jury. The decision to sustain an objection, to offer a curative instruction, or to grant a mistrial in circumstances like this one generally rests in the trial court's discretion. *See Hodgdon*, 128 N.H. at 368, 515 A.2d at 1200. In some circumstances, however, counsel's remarks may be so prejudicial as to mandate reversal. We conclude that the city's closing remarks, calculated as they were to encourage the jury to make a decision based on personal interest and bias rather than reason and the presented evidence, were "so prejudicial as to require a new trial." *Warner*, 538 F.2d at 911.

■ We do not hold today that remarks such as those made in this case warrant an "automatic" mistrial. We do hold that the general instructions—regarding the jury's role in the process and the jury's general duty "to reach a verdict on the evidence and the law without sympathy, prejudice, fear or favor for or against any party"—were not sufficient to cure the taint of the improper argument. An immediate instruction, such as the one given in the *Forrestal* case, might have done so. *See Forrestal*, 848 F.2d at 308. In *Forrestal*, immediately following the improper argument, the trial court instructed the jury thus:

> This is a question of argument, members of the jury, and you view it as such. You will be told you must decide this case impartially, without prejudice and without sympathy and without—based purely on the facts and the law as I give it to you.

*Id.* In the instant case, where the trial court not only did not give such an immediate curative instruction but overruled the plaintiff's objection, "we cannot determine the extent to which the jury may have been influenced by the [impermissible] comments," *State v. Bujnowski*, 130 N.H. 1, 6, 532 A.2d 1385, 1388 (1987), and therefore remand for a new trial. Because we reverse on this ground, we need not consider the plaintiff's other arguments.

*Reversed and remanded.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.