Hillsborough-northern judicial district
No. 94-198

THOMAS LEBLANC

v.

AMERICAN HONDA MOTOR CO., INC.

January 28, 1997

*Vincent C. Martina,* of Amherst, by brief and orally, for the plaintiff.

*Shaheen, Cappiello, Stein & Gordon, P.A.*, of Concord (*Robert A. Stein* and *Diane Perin Hock* on the brief, and *Mr. Stein* orally), for the defendant.

BROCK, C.J. The defendant, American Honda Motor Co., Inc. (Honda), appeals the special jury verdict of the Superior Court (*Conboy*, J.), holding Honda liable for injuries caused by the defective design and failure to warn of the braking and steering properties of its product, the Honda Odyssey. For the reasons that follow, we reverse and remand.

On January 16, 1988, the plaintiff, Thomas LeBlanc, while riding on the back of a snowmobile driven by his friend, was injured when the snowmobile collided with an off-road vehicle driven by Stephen Beaulieu and manufactured by Honda. The impact of the collision severely injured the plaintiff's leg.

The plaintiff sued Beaulieu and Honda alleging negligent operation of the Odyssey by Beaulieu and asserting a products liability claim against Honda. The jury rendered its verdict via a special verdict form that contained eight questions agreed to by the parties. The jury found: that the 1985 Honda Odyssey contained a design defect which rendered it unreasonably dangerous; that the design defect was a cause of the accident; that the Odyssey was unreasonably dangerous and defective due to Honda's failure to adequately warn the driver, Beaulieu; that the failure to warn Beaulieu was a cause of the accident; that the plaintiff proved all the elements of his negligence claim against Beaulieu; that negligence or misconduct by the plaintiff contributed to cause his injury; that Honda was 68% at fault, Beaulieu was 27% at fault, and the plaintiff was 5% at fault; and that the plaintiff's total damages were $2,206,000. The superior court ordered judgment against Honda for $1,487,196 plus statutory interest and costs, and against Beaulieu for $590,504 plus statutory interest and costs.

On appeal, Honda argues: (1) that the plaintiff's trial counsel, Vincent C. Martina, made improper and inflammatory remarks during the trial and during closing arguments in an attempt to cultivate in the jury a racial and national bias against Honda, a subsidiary of a Japanese corporation; (2) that the trial court erred by admitting previously undisclosed testimony and by allowing a courtroom demonstration; and (3) that the trial court erred by denying the defendant's motion for judgment notwithstanding the verdict.

■ Honda first argues that certain remarks made by Martina so tainted the proceedings as to deprive Honda of a fair trial and that

denial of its motion for a mistrial and motion for a new trial on this ground was reversible error. We agree.

The trial court should grant a party's motion for a mistrial if it determines that

> some circumstance . . . indicates that justice may not be done if the trial continues to verdict. To justify a mistrial, remarks or the conduct must be more than merely inadmissible; they must constitute an irreparable injustice that cannot be cured by jury instructions. Because the trial court is in the best position to gauge prejudicial impact, it has broad discretion to determine whether a mistrial or other remedial action is necessary.

*State v. Martin*, 138 N.H. 508, 516, 643 A.2d 946, 951 (1994) (citations, quotations, and brackets omitted); *see Walton v. City of Manchester*, 140 N.H. 403, 408, 666 A.2d 978, 981-82 (1995). Remedial action includes, but is not limited to, curative jury instructions, which the jury is presumed to follow. *State v. Lemire*, 130 N.H. 552, 555, 543 A.2d 425, 426 (1988).

The defendant points to several statements made by Martina as grounds for reversal. The first, directed at Honda's vehicle design expert, focused on the color scheme of the Odyssey. Martina asked the expert if he knew the color of the Japanese flag. After Honda objected, Martina explained that he was curious about how the machine's color happened to be designed. The court decided to give Martina "some latitude." Martina then questioned the expert about whether the expert had ever wondered why the Odyssey is "red, white and blue, the color of the American flag."

The second series of statements highlighted by Honda occurred during the plaintiff's closing argument:

> What's this case about? It's not about Honda making great automobiles or Sony making good Walkmans. But also it's not about Pearl Harbor or the Japanese prime minister saying Americans are lazy and stupid.
>
> . . . .
>
> What this case is about is not American xenophobia; it's about corporate greed.

Counsel for Honda again objected and, at a bench conference, moved for a mistrial. At the bench conference, Martina explained that he was certain that the fact that the defendant is a foreign corporation had entered the minds of the jurors, and he was trying to tell them that that was irrelevant to the case. The court denied the motion for

a mistrial but warned Martina: "I am, however, Mr. Martina, cautioning you that there's a limit to how far argument can go, and I think you're right at the wall on it. So please back away from it and focus on the issues in the case." The court did not strike the remarks or issue a curative instruction to the jury.

At the conclusion of the trial, the court instructed the jury:

> I try to be fair and impartial, just as you are required to be. . . . You must decide the case only on the basis of the evidence and the law as I give it to you. You should keep in mind that all parties, whether an individual or a corporation, are equal before the law. . . .

And again:

> [Y]ou should decide this case without passion, without prejudice, and without sympathy. It is your highest duty as officers of this court to conscientiously determine a fair and just result in this case.

See *Walton*, 140 N.H. at 408, 666 A.2d at 982. The court never instructed the jury specifically with regard to Attorney Martina's above-quoted remarks.

Although the decision whether to grant the mistrial motion or the motion for a new trial falls within the trial court's discretion, *see Martin*, 138 N.H. at 516, 643 A.2d at 951, "[i]n some circumstances . . . , counsel's remarks may be so prejudicial as to mandate reversal," *Walton*, 140 N.H. at 408, 666 A.2d at 982; *see Texas Employers' Ins. Ass'n v. Guerrero*, 800 S.W.2d 859, 863 (Tex. Ct. App. 1990) (appeals to racial prejudice incurable by instruction).

> We do not expect advocacy to be devoid of passion. But jurors must ultimately base their judgment on the evidence presented and the natural inferences therefrom. Thus, there must be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice.

*Walton*, 140 N.H. at 406, 666 A.2d at 981 (quotation, brackets, and ellipsis omitted). A mistrial or a new trial may be warranted "where counsel attempts to appeal to the sympathies, passions, and prejudices of jurors grounded in race or nationality, by reference to the opposing party's religious beliefs or lack thereof, or by reference to a party's social or economic condition or status." *Id.* at 407, 666 A.2d at 981 (quotation omitted). Such an appeal was attempted in this case.

The remarks, when viewed in isolation and outside of the context of the trial, may not seem to be so "explicit and brazen," *Guerrero*,

800 S.W.2d at 864, as to warrant the severe remedy of reversal. This sort of argument, which "may be indirect or implied, as well as direct or express," Annotation, *Statement by Counsel Relating to Race, Nationality, or Religion in Civil Action as Prejudicial,* 99 A.L.R.2D 1249, 1255 (1965), is nonetheless an affront to the court. *See Guerrero,* 800 S.W.2d at 865 (characterizing racial or ethnic appeals to be "an attack on the social glue that helps bind society together"). "It is true that counsel's closing reference was brief. At the same time, when an elephant has passed through the courtroom one does not need a forceful reminder." *Willey v. Ketterer,* 869 F.2d 648, 652 (1st Cir. 1989).

■■ Honda invites us to declare appeals to racial bias *per se* incurable. Although we have considered seriously the adoption of a *per se* rule of reversal in such cases, we believe it better at this time to leave these matters to the sound discretion of the trial court. *Compare Walton,* 140 N.H. at 408, 666 A.2d at 982 *with Guerrero,* 800 S.W.2d at 866. Such appeals, although extremely unprofessional and deplorable, must be considered in light of the circumstances of the particular case. *See Lincoln v. Gupta,* 370 N.W.2d 312, 317 (Mich. Ct. App. 1985). When a racial or ethnic appeal has been made, as in this case, the trial judge

> must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

*Forrestal v. Magendantz,* 848 F.2d 303, 309 (1st Cir. 1988) (quotation omitted); *see Walton,* 140 N.H. at 408, 666 A.2d at 982. In reaching this conclusion, we keep in mind that it will be an unusual case in which the invocation of racial or ethnic bias should not result in a mistrial or sanctions, *see Walton,* 140 N.H. at 408, 666 A.2d at 982; N.H. R. PROF. CONDUCT 3.5 ("A lawyer shall not . . . seek to influence a . . . juror . . . by means prohibited by law . . . ."), and that attorneys and judges have authority to refer these matters to the committee on professional conduct or the committee on judicial conduct when appropriate. *See* N.H. R. PROF. CONDUCT 8.3; N.H. PROF. CONDUCT COMM. R. 2.1; SUP. CT. R. 38, Canon 3(A)(2).

In denying Honda's motion for a new trial, the trial court recognized that Martina's remarks "raised irrelevant and potentially prejudicial issues," but nonetheless concluded that "the jury followed the Court's instructions, and based its verdict only on the

evidence and the law." No immediate curative jury instruction was given. *See Walton,* 140 N.H. at 408, 666 A.2d at 982; *cf. South Hampton Co. v. Stinnes Corp.,* 733 F.2d 1108, 1123-24 (5th Cir. 1984) (trial court's immediate curative instruction after ethnic appeal "sufficient to smother the inflammatory effect" of comments). Plantiff's counsel's remarks, however, were "not only improper but reflect disregard . . . of his duty to the court and to the adversary system which supposes a fair contest, not under-handed blows." *South Hampton Co.,* 733 F.2d at 1124. Under the circumstances of this case, we conclude that Martina's remarks, "calculated as they were to encourage the jury to make a decision based on . . . bias rather than reason and the presented evidence, were so prejudicial as to require a new trial." *Walton,* 140 N.H. at 408, 666 A.2d at 982 (quotation omitted); *see Border Brook Terrace Condo. Assoc. v. Gladstone,* 137 N.H. 11, 18, 622 A.2d 1248, 1253 (1993).

Honda argues that several other remarks made by Martina during the trial would also, independently, mandate a new trial. Specifically, it asserts that Martina falsely implied that the Odyssey had caused deaths; that he wrongly implied that the defendant deprived the jury of valid evidence; that he falsely implied that the plaintiff had sustained psychological injury and would only be able to walk with great difficulty; and that he improperly expressed his personal opinion. The trial court sustained objections, immediately instructed the jury, or cautioned Martina in front of the jury at the time each of these statements was made. *See Lemire,* 130 N.H. at 555, 543 A.2d at 426-27 (jury presumed to follow trial judge's instructions). Because we assume that counsel for the plaintiff, knowing that this conduct is inappropriate, is unlikely to make the same mistakes on remand, we decline to address Honda's arguments.

Honda next argues that the trial court erred in permitting the plaintiff's expert to testify regarding testing with a model vehicle. The defendant asserts that the admission of previously undisclosed testimony and the courtroom demonstration unfairly surprised the defendant and substantially prejudiced its defense. *See* SUPER. CT. R. 62; *Welch v. Gonic Realty Trust Co.,* 128 N.H. 532, 535, 517 A.2d 808, 809 (1986). Because the model and accompanying testimony will no longer be a surprise in the event of another trial, we decline to address this issue.

Next, the defendant argues that the trial judge erred in denying its motion for judgment notwithstanding the verdict because the plaintiff failed to present sufficient evidence on the issues of design defect and causation, and inadequate warning and causation. We disagree.

The standard of review of a motion for judgment notwithstanding the verdict is well established:

> A party is entitled to judgment notwithstanding the verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. The court cannot weigh the evidence or inquire into the credibility of the witnesses, and if the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied.

*Broderick v. Watts*, 136 N.H. 153, 159, 614 A.2d 600, 604 (1992) (citations, quotation, and brackets omitted).

In this case, the plaintiff sought to prove that the absence of a rear-wheel differential on the Odyssey amounted to a design defect and that the defect was a cause of the accident. The plaintiff also sought to prove that Honda failed adequately to warn the Odyssey's driver of the general operating characteristics of the vehicle on packed snow and that the failure to warn made the Odyssey unreasonably dangerous.

> To maintain a products liability claim based on defective design, a plaintiff must prove: (1) that the design of the product created a defective condition unreasonably dangerous to the user; (2) that the condition existed when the product was sold by a seller in the business of selling such products; (3) that the use of the product was reasonably foreseeable by the manufacturer; and (4) that the condition caused injury to the user or the user's property.

*Chellman v. Saab-Scania AB*, 138 N.H. 73, 77, 637 A.2d 148, 150 (1993).

> An analysis of whether a product is unreasonably dangerous requires evaluating many possible factors including a product's social utility balanced against the risk of danger, the cost and practicality of reducing the risk of danger, and the presence or absence and efficacy of a warning of hidden danger. . . . If the design of a product makes a warning necessary to avoid an unreasonable risk of harm from a foreseeable use, the lack of warning or an ineffective warning causes the product to be defective and unreasonably dangerous.

*Id.* at 77-78, 637 A.2d at 150; *see Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978).

The plaintiff's design defect and failure to warn claims are separate. Under the design defect claim, the issue is whether the Odyssey was defective *in that* it had a fixed rear axle and whether that defect made the product unreasonably dangerous. The issue in the failure to warn claim, in contrast, is whether the danger inherent in the Odyssey was or could have been made reasonable by the issuance of adequate warnings.

"[L]iability may attach if the manufacturer did not take available and reasonable steps to lessen or eliminate the danger of even a significantly useful and desirable product." *Thibault,* 118 N.H. at 807, 395 A.2d at 846. Moreover, "when an unreasonable danger could have been eliminated without excessive cost or loss of product efficiency, liability may attach even though the danger was obvious or there was adequate warning." *Id.* at 808, 395 A.2d at 847. In the end,

> [a] court will rarely be able to say as a matter of law that a product has no social utility, or that the purpose or manner of its use that caused the injury was not foreseeable. The jury must decide whether the potentiality for harm is open and obvious. Reasonableness, foreseeability, utility, and similar factors are questions of fact for jury determination.

*Id.* at 809, 395 A.2d at 847-48 (citations omitted).

"The existence of concurrent causes will not in and of itself vitiate a finding that one cause was a proximate cause of the injury." *Reid v. Spadone Mach. Co.,* 119 N.H. 457, 463-64, 404 A.2d 1094, 1098 (1979), *overruled in part by Daigle v. City of Portsmouth,* 129 N.H. 561, 534 A.2d 689 (1987); *see Chellman,* 138 N.H. at 79-80, 637 A.2d at 152. The plaintiff need not show that either design defect or failure to warn was the sole proximate cause of the accident. *See Reid,* 119 N.H. at 463-64, 404 A.2d at 1098.

Here, the plaintiff's automobile expert testified as to the handling behavior of vehicles lacking rear-wheel differentials. The rear wheels of such vehicles essentially are locked together — forced at all times to rotate at the same rate. With the aid of a model, the expert demonstrated that vehicles which combine conventional steering with fixed rear axles behave differently than vehicles which combine conventional steering with rear axles having differentials. The expert testified that the class of vehicles lacking rear-wheel differentials, of which the Odyssey is one, have uncertain steering responses depending on whether the front wheels grip or the rear wheels grip in a turn. The expert testified that in evasive maneu-

vers, when turning to avoid something, "there's a tremendous risk that the back end will simply break away and you'll spin sideways into something." Furthermore, it was the expert's opinion that the lack of a differential in the Odyssey was a design defect and that the defect made the Odyssey dangerous. Finally, the expert testified that he could not see how Honda could be unaware of the effect of the fixed axle and that it was foreseeable that this type of collision would occur.

In a deposition read into the record at trial, the plaintiff's warnings expert stated that the Odyssey was defective because it did not come with instructions and warnings regarding the special hazards involved with driving the Odyssey on a frozen lake, especially in light of the fact that the Odyssey employs hand-operated brakes. He stated that the warnings that did come with the Odyssey regarding safe operation of the vehicle were inadequate. In his report, he indicated that difficulties associated with hand-actuated controls "have caused brake lockup and subsequent skids such as took place in this accident." Finally, he stated that even assuming the driver did lock the brakes, the skid could have been caused by over-steering or loss of traction on the surface.

Beaulieu testified that he applied the Odyssey's brakes and turned hard right immediately prior to the moment of impact. He also testified that he was probably traveling thirty to thirty-five miles per hour — a speed at or above which, according to the defendant's own expert, the Odyssey reaches the limit of "its frictional capabilities."

■ The jury explicitly found (1) that the Odyssey contained a design defect which rendered it unreasonably dangerous and which was a cause of the accident, and (2) that the Odyssey was unreasonably dangerous and defective because of Honda's failure adequately to warn the driver and that this failure to warn was a cause of the accident. Viewing the evidence in the light most favorable to the plaintiff, we cannot say that the sole reasonable inference that could have been drawn therefrom is so overwhelmingly in favor of Honda that no contrary verdict could stand. *Broderick*, 136 N.H. at 159, 614 A.2d at 604. Accordingly, we find that the trial judge properly denied the defendant's motion for judgment notwithstanding the verdict.

We decline to address the defendant's remaining arguments either because the defendant failed to raise timely objections at trial, or because it failed to include the issues in its notice of appeal. *See*

SUP. CT. R. 16(3)(b); *LeFavor v. Ford*, 135. N.H. 311, 313, 604 A.2d 570, 572 (1992).

*Reversed and remanded.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; HORTON, J., with whom THAYER, J., joined, dissented; BATCHELDER, J., concurred specially; JOHNSON, J., concurred.

BATCHELDER, J., concurring specially: Because I would adopt a *per se* rule of reversal, I concur only in the result reached in Chief Justice Brock's opinion.

HORTON, J., dissenting: The plurality correctly asserts that the plaintiff's arguments regarding the color of the Honda Odyssey and the need to ignore Japanese transgressions in favor of attention to corporate greed were "extremely unprofessional and deplorable," but the plurality also correctly states that these arguments "must be considered in light of the circumstances of the particular case." The plurality further notes correctly that "the decision whether to grant the mistrial motion or the motion for a new trial falls within the trial court's discretion." The actual rule is "[b]ecause the trial court is in the best position to gauge prejudicial impact, it has broad discretion to determine whether a mistrial or other remedial action is necessary." *State v. Martin*, 138 N.H. 508, 516, 643 A.2d 946, 951 (1994). I would hold that the trial court's actions relative to these arguments were within its broad discretion.

Neither comment was directly related to an issue in the case. Although completely uncalled for, the arguments were, at best, a weak attempt to engender nationalistic (rather than racial) prejudice, the former suggesting that it might be unfair for a Japanese manufacturer to use the colors of the American flag, and the latter pointing out (albeit in the context of suggesting that the jury should not consider this fact) that the Japanese had bombed Pearl Harbor and criticized American workers. These comments are so unrelated to the basis of the case and so lame in their obvious intent to move the jury to act on prejudice that the trial court could make a fair assessment that any prejudice would be cured by its general instructions. In the words of the trial court, the plaintiff "raised irrelevant and potentially prejudicial issues. . . . The Court must evaluate the statements in the context of the entire trial and determine whether they . . . rendered the trial unfair." The trial court specifically found that the jury followed the court's instructions and based its verdict on the evidence and the law. A review of the record demonstrates that the verdict is, in all other respects,

consistent with the evidence and the law. There is no indication that the verdict was based on national prejudice.

I would affirm the verdict. To reach this result, I have reviewed the remaining issues preserved on appeal and not addressed in the plurality opinion. This review leads me to the conclusion that the defendant's claims of error are without merit.

I respectfully dissent.

THAYER, J., joins in the dissent.