Cheshire
No. 2000-824

CHARLES HERMAN

v.

MONADNOCK PR-24 TRAINING COUNCIL, INC.

Argued: March 13, 2002
Opinion Issued: June 7, 2002

*John A. Bell*, of Keene, on the brief, and *Hall, Hess, Stewart, Murphy & Brown, P.A.*, of Manchester (*Peter E. Hutchins* on the brief and orally), for the plaintiff.

*Patch & Fitzgerald*, of Manchester (*Edward F. Patch* on the brief), and *Wiggin & Dana*, of New Haven, Connecticut (*Mark R. Kravitz* and *Jesse M. Furman* on the brief, and *Mr. Kravitz* orally), for the defendant.

BROCK, C.J. The plaintiff, former corrections officer Charles Herman, suffered personal injuries while receiving police baton training from a certified instructor of the defendant, Monadnock Training Council, Inc. (Monadnock). The plaintiff brought suit in Superior Court (*Arnold*, J.) alleging that Monadnock was vicariously liable for the negligent acts of its agent or, alternatively, directly liable for negligently supervising and training its agent. The jury returned a special verdict for the plaintiff. Monadnock appeals, alleging that the evidence was insufficient to establish an agency relationship between Monadnock and its instructor. We affirm.

The record supports the following pertinent facts. Corrections officers employed by the Cheshire County House of Corrections (jail) are authorized to carry and use only the PR-24 police baton, a product exclusively manufactured by Monadnock Lifetime Products, Inc. (MLP). Apparently, corrections officers use police batons for protection and to assist in restraining inmates. Monadnock is a nonprofit corporation affiliated with MLP that certifies instructors to train others in the use of the PR-24. According to Monadnock, its overall mission is to facilitate the training of law enforcement and correctional officers in the use of the PR-24.

The plaintiff characterizes Monadnock as part of MLP's overall marketing strategy. MLP's product catalogue and website create an inference that Monadnock's "world-renowned" training programs are associated with MLP and its products. Indeed, the MLP product catalogue touts "its" training program, meaning Monadnock's training program, as a major selling point of the PR-24 and references Monadnock instructors as "ours." Further, the MLP catalogue lists Monadnock's PR-24 training program and materials among the products available from MLP and states that Monadnock is the "Training Division" of MLP. Monadnock maintains a database of certified instructors who are referred to customers purchasing MLP products. In turn, Monadnock's website, which is linked to MLP's site, maintains a calendar of training courses offered by Monadnock instructors. Monadnock's instructors are authorized to sell a limited quantity of MLP products to those who attend training courses. As the president of Monadnock testified, Monadnock's training program can be fairly characterized as part of MLP's marketing strategy.

Consistent with its mission to facilitate the training of only police officers, corrections officers and other law enforcement personnel, Monadnock instructors must screen students to ensure that they are affiliated with law enforcement agencies. Monadnock maintains detailed lesson plans, guidelines regarding the proper handling of the PR-24 and testing materials, to which instructors must strictly adhere when conducting a training program. Further, they are required to give a history of MLP and its products and are barred from using police batons manufactured by other companies during training programs. The literature and police batons used during training programs are all labeled with either the Monadnock or MLP name. Monadnock may suspend or decertify any instructor who fails to strictly adhere to any of Monadnock's lesson plans and conditions or acts in a manner that is detrimental to the company.

Each Monadnock instructor is required to sign an agreement, stating that the instructor "recognize[s] and acknowledge[s] that [he or she is] NOT an employee or agent of [Monadnock]." Instructors are free to charge their own rates for teaching Monadnock training courses, and may choose the time, place and other arrangements associated with teaching such courses. The agreement, however, requires instructors to be recertified by Monadnock every four years. Further, it mandates that the Monadnock lesson plans be used and followed and vests instructors with the authority to certify students as proficient in PR-24 use. Proficiency standards are prescribed by Monadnock and instructors are responsible for ensuring these standards are met before they certify any student. Monadnock also reserves the right to revoke the certification of any

instructor who does not strictly adhere to the requirements of the agreement.

In February 1996, the jail hired the plaintiff as a corrections officer. As a new corrections officer, the plaintiff was required to attend and pass various training programs, including a program on the proper use of the PR-24. The plaintiff attended an in-house PR-24 training in March 1996. According to the plaintiff, at the beginning of the PR-24 training, Robert Hebert, a corrections officer at the jail, identified himself as a "certified authorized instructor for Monadnock." Because Hebert was the only certified Monadnock instructor employed by the jail, he was designated by the jail as its PR-24 trainer. Hebert showed the students a blank certificate of competency, which would be issued to each student who successfully completed the training. The certificate contained signature lines for Hebert, as the certified PR-24 Monadnock instructor, and the president of Monadnock. Hebert then distributed Monadnock training materials to the students and proceeded to give the training as dictated by Monadnock's guidelines and lesson plans.

Sometime during the training, Hebert asked the plaintiff to participate in a live demonstration, during which Hebert and another student would pretend to attack the plaintiff. The plaintiff was instructed to fend off the attackers with the PR-24 in accordance with the training he had received. The plaintiff testified that he agreed to participate in the demonstration based upon Hebert's certification as a Monadnock instructor. The plaintiff also testified that he believed Hebert was acting as an agent of Monadnock. During the demonstration, the plaintiff was not outfitted with any protective headgear and the cement walls surrounding the training room were not padded. The plaintiff lost his balance attempting to fend off his attackers and struck his head on a cement wall. The accident resulted in significant injuries, including severe head trauma.

The plaintiff sought recovery under two counts of negligence. First, the plaintiff asserted that Hebert negligently conducted the training program resulting in the plaintiff's injuries. The plaintiff contended that Hebert was Monadnock's agent under a theory of apparent authority and, therefore, Monadnock was vicariously liable for his negligent acts or omissions. The plaintiff's second count alleged that Monadnock negligently supervised and trained Hebert. This count was premised on the theory that Hebert was Monadnock's agent by actual authority.

The trial court instructed the jury on the two theories of liability advanced by the plaintiff. Further, the jury was specifically instructed on the concepts of apparent and actual authority. After the charge, the jury was asked to render a special verdict. The special verdict form asked the jury to consider separately each of the plaintiff's claims against the

defendant. The special verdict form also asked the jury to find whether agency had been established under the particular agency theory – apparent or actual authority – advanced for each count. The jury returned both special verdicts in favor of the plaintiff. Thereafter, Monadnock moved for judgment notwithstanding the verdict and to set aside the verdict. The motions were denied and this appeal followed.

In its brief, Monadnock asserts that the evidence adduced at trial was insufficient as a matter of law to prove the existence of an agency relationship by actual or apparent authority. The remaining issues raised in its notice of appeal were not briefed and, therefore, we deem them waived. *See Town of Nottingham v. Bonser*, 146 N.H. 418, 430 (2001). The record presents some question as to whether Monadnock properly preserved its sufficiency of the evidence claim as it pertains to *actual* authority; however, we will assume without deciding that Monadnock preserved this issue in its motion for judgment notwithstanding the verdict. Therefore, we begin by reviewing this claim under the standard of review for such a motion, which is well established:

> A party is entitled to judgment notwithstanding the verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. The court cannot weigh the evidence or inquire into the credibility of the witnesses, and if the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied.

*LeBlanc v. American Honda Motor Co.*, 141 N.H. 579, 585 (1997) (quotation omitted).

As part of the plaintiff's negligent supervision and training claim, he had to prove that Hebert was granted actual authority to conduct training programs on Monadnock's behalf. Whether an agency relationship has been established is a question of fact. *Carrier v. McLlarky*, 141 N.H. 738, 739 (1997). An agency relationship, or lack thereof, does not turn solely upon the parties' belief that they have or have not created one. Rather, the necessary factual elements to establish agency involve: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions. *See id.*; *see also Petition of Contoocook Valley Paper Co.*, 129 N.H. 528, 532 (1987). The granting of actual authority and consent to act with such authority may be either

express or "implied from the parties' conduct or other evidence of intent." *Carrier*, 141 N.H. at 739 (quotation omitted); *see also Demetracopoulos v. Strafford Guidance Ctr.*, 130 N.H. 209, 213 (1987). As for the element of control, if no evidence of it is presented, "the relationship of principal and agent cannot exist." *Singh v. Therrien Management Corp.*, 140 N.H. 355, 358 (1995). Control by the principal does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do. *See* RESTATEMENT (SECOND) OF AGENCY §§ 1 comment *b* at 9, 14 comment *a* at 60 (1958).

We hold that the record, viewed in the light most favorable to the plaintiff, supports a finding that an agency relationship existed pursuant to actual authority. Evidence was produced that instructors entered into an agreement stating that they were authorized to conduct trainings as prescribed by Monadnock's lesson plans and guidelines. Instructors could only train law enforcement or similar personnel and were required to ensure that each student fell within this category. Further, instructors were authorized to certify those students who met minimum standards established by Monadnock. Instructors who failed to strictly adhere to the lesson plans and guidelines faced suspension or decertification at Monadnock's sole discretion. Instructors could also be suspended or decertified by acting in any manner deemed detrimental to Monadnock's goals. Lastly, instructors were required to be recertified by Monadnock's standards every four years.

In sum, the record supports a finding that Monadnock granted Hebert actual authority to market and promote MLP products and to train students exclusively with MLP products. Hebert consented to this arrangement and indeed, held himself out to his students as a "certified authorized Monadnock instructor." Sufficient evidence also supports a finding that Monadnock controlled the actions of its instructors by prescribing the manner and method in which instructors were to carry out trainings. Further, Monadnock reserved the right to suspend or decertify instructors wholly at its discretion. In this case, we simply cannot find that the sole reasonable inference that may be drawn from the evidence, viewed in the light most favorable to the plaintiff, is so overwhelmingly in favor of Monadnock that no contrary verdict could stand. *See LeBlanc*, 141 N.H. at 585.

In this case, the jury returned a special verdict on both counts in favor of the plaintiff. The use of the special verdicts was plain; they were intended to submit two separate theories of liability to the jury. The jury's determination regarding the plaintiff's damages was, in turn, predicated

upon a finding for the plaintiff upon *either* theory. *See Beacon Bowl v. Wisconsin Elec. Power*, 501 N.W.2d 788, 798 (Wis. 1993) (special verdict containing separate theories of liability, any one of which would sustain finding of liability, properly submitted to jury). As the record before us supports the jury's special verdict upon the plaintiff's negligent supervision and training claim, there is no need for us to review whether the evidence was sufficient to sustain the special verdict upon the plaintiff's other theory of liability. *See* 75B AM. JUR. 2d *Trial* §§ 1836, 1851 (1992) (distinguishing special verdict from general verdict; definiteness and certainty of special verdict).

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU, DALIANIS and DUGGAN, JJ., concurred.