NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2021-0357


MARC MALLARD

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

Argued: April 21, 2022
Opinion Issued: January 4, 2023

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Donna J. Brown and Michael G. Eaton on the brief, and Michael G. Eaton, orally), for the petitioner.


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Zachary L. Higham, assistant attorney general, on the brief and orally), for the respondent.

MACDONALD, C.J. The petitioner, Marc Mallard, appeals an order of the Superior Court (Schulman, J.) dismissing his petition for habeas corpus on grounds that it was procedurally defaulted and, even if it were not, that Mallard failed to demonstrate actual prejudice as a result of his trial counsel's ineffective assistance. We reverse and remand.

I. Background

The following facts were found by the trial court or are drawn from the record. Mallard was charged with committing acts of domestic violence in 2012 against a romantic partner. As the trial court described them, Mallard is "a large African, American man," and the victim is "a much smaller white woman."

A jury trial took place on July 25, 2013. The presentation of evidence lasted less than three hours. The central witness was the victim. According to her testimony, she and Mallard met in 2006 and began dating six months later. In 2008, they decided to have a child together. After the birth of the child, the relationship between Mallard and the victim deteriorated.

On the night of the incident that resulted in the charged acts, Mallard visited the victim at her home. He was upset because the victim had communicated with a woman Mallard was allegedly involved with. According to the victim, Mallard punched her in the face, causing her to suffer a black eye and a split lip. Mallard then tried to wrap a belt around the victim's neck, threw the victim onto the bed, and started to choke her with his hands. Mallard suddenly stopped the attack, began to cry, and left the victim's home. The victim did not call the police because she did not want to get Mallard in trouble and because she was embarrassed. The victim's mother, who saw the victim the following day, testified that she observed a bruise on the victim's face and was told by the victim that she had drunk alcohol and taken Tylenol PM and fallen down in the bathroom.

Mallard's defense was that the victim's accusations were fabricated. Trial counsel focused on several facts including that: the victim's testimony was hazy as to how many times she was punched and how long the incident lasted; when she spoke with a police officer approximately one month later the victim was unsure which side of her face had been bruised; the victim continued a friendly relationship with Mallard after the assault and sent him text messages saying that she loved him; there was no evidence of injuries related to the attempted strangulation; and the bruise on the victim's face in a photograph taken the following day was inconsistent with the victim's claim that she had been punched in the face by a large, strong man using great force.

During trial counsel's cross-examination of the victim regarding the incongruity between the photograph of her injury and her account of the assault, the following exchange took place:

> Q. So that picture's been darkened up; has it not?
>
> A. It's a printout from my cell phone, so it's probably, actually, about right.

Q.  All right.  And so even though it's been darkened up, you're saying that shows on your left eye, the bruise that happened the day before; is that correct?

A.  Yes.

Q.  And where's the split lip?

A.  It's right there.

Q.  Okay.  The right eye looks kind of dark too.  He didn't beat you there too; did he?

A.  No.

Q.  No?  So why would your right eye look as dark as your left eye if he didn't hit you there too?

A.  My head was turned there.

Q.  So that was the day -- the next day, correct?

A.  The following night.

Q.  I'm sorry?

A.  The following night.

Q.  Twenty-four hours or less?

A.  Yes.

Q.  And so this big guy, this big, menacing black guy hit you with his fist and that's what shows in that picture, correct?

A.  Yes, I had makeup on too.

The jury, which was all white, convicted Mallard of second degree assault, attempted second degree assault, simple assault, and criminal threatening.  See RSA 631:2, I(f) (2016); RSA 629:1 (2016); RSA 631:2-a, I(a) (2016); RSA 631:4, I(d) (2016).  We affirmed his convictions on direct appeal. See State v. Mallard, No. 2013-0673 (non-precedential order), 2015 WL 11071107 (N.H. January 21, 2015).  Mallard is currently serving a sentence of seven to fourteen years in the state prison plus a consecutive term of three to six years, which includes a sentence on charges unrelated to this case.

3

In February 2015, Mallard moved for a new trial on grounds of ineffective assistance of counsel. See RSA ch. 526. Specifically, Mallard argued that his trial counsel was ineffective because counsel: (1) agreed to a curative instruction that there was no evidence that the victim was motivated by jealousy as a reason for coming forward in the case; and (2) failed to cross-examine the victim about friendly text messages she sent after the alleged assaults. The superior court denied the motion.

In July 2020, Mallard petitioned the superior court for a writ of habeas corpus. See N.H. CONST. pt. II, art. 91 (providing that "[t]he privilege and benefit of the Habeas Corpus, shall be enjoyed in this State, in the most free, easy, cheap, expeditious, and ample manner"); RSA ch. 534. Mallard argued that, by describing him as a "big, menacing black guy" during cross-examination of the victim, trial counsel deprived him of his constitutional right to the effective assistance of counsel. The trial court dismissed the petition, finding that because Mallard had "already fully litigated" a motion for a new trial based on the ineffectiveness of trial counsel — albeit on different grounds — his habeas petition was procedurally barred. The court reasoned that "a habeas petitioner cannot serially litigate a claim of ineffective assistance of counsel by filing a string of post-conviction motions and petitions, each one drawing on a different line from the same one-day transcript." In addition, although recognizing that in New Hampshire there is "no statute of limitations for habeas petitions," the trial court determined that by "remain[ing] silent about his present [claim] for nine years," Mallard's petition was "untimely under something akin to laches."

Notwithstanding its dismissal of the petition on procedural grounds, the trial court addressed the merits of Mallard's claim. The court agreed that Mallard had proved that his trial counsel rendered constitutionally deficient representation by using the phrase "big, menacing black guy." As the court stated, "This appeal to the jurors' explicit or implicit racial biases was entirely improper. Period." The court reasoned that "the only function the word 'black' had was to amp up the violence of [the victim's] account so that it could be better impeached by [the] photograph." The court found that doing so perpetuated "the pernicious and false stereotype that black men are violent and dangerous" and "played to the jurors' implicit racial biases." According to the court, "To conjure up this racist myth — which has been responsible for so much injustice for so long — was wrong, wrong, wrong." The trial court determined that saying what trial counsel said "without any further explanation at any point during the trial" was irrational and, therefore, rendered trial counsel's representation constitutionally deficient.

Nevertheless, the court determined that Mallard had failed to prove that he was prejudiced by trial counsel's deficient representation. The court reasoned that it could not find that trial counsel's reference to race called the jury verdict into question when counsel's "misstep . . . was limited to a single

4

word," counsel "never expressly argued the stereotype" nor did he "revisit the issue during his closing argument," and "[n]o witness picked up on it." According to the trial court, "No reasonable juror would have understood trial counsel to be suggesting that Mallard acted in conformity with an innate propensity towards violence." The court subsequently denied Mallard's motion for reconsideration. This appeal followed.

## II. Analysis

On appeal, Mallard raises two issues. First, he asserts that the trial court erred in finding his habeas petition was procedurally barred. Second, Mallard argues that the trial court erred in finding that he failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Quotation omitted.) We address these issues in turn.

### A. Procedural Default

Mallard argues that the trial court erred by conflating a motion for new trial with a habeas petition in finding procedural default. He asserts that a motion for new trial and a habeas petition "involve two distinct statutory schemes and procedures" and that "[n]either statutory scheme purports to limit the application of the other." Thus, Mallard argues, invoking his "three separate post-conviction procedures" — direct appeal, motion for new trial, and petition for a writ of habeas corpus —"d[id] not pose the risk of a successive 'string' of habeas petitions."

The Warden counters that Mallard's claim "is procedurally barred because he has already fully litigated a counselled motion for a new trial in which he argued that trial counsel was ineffective." (Quotation omitted.) Although recognizing that "there may be some variation in the two procedural vehicles" of a motion for new trial and a petition for a writ of habeas corpus, the Warden asserts that in this case they are "functionally equivalent." Because Mallard "alleges no new facts or material changes since the time of his original post-conviction proceedings," the Warden argues that he "cannot avoid the consequences of a nine-year procedural default by re-captioning his motion for a new trial as a petition for writ of habeas corpus."

In an appeal from a denial of a petition for a writ of habeas corpus, we accept the habeas court's factual findings unless they lack support in the record or are clearly erroneous. State v. Santamaria, 169 N.H. 722, 725 (2017). We review the court's legal conclusions de novo. Id.

The general rule in New Hampshire is that a petition for habeas corpus is not a substitute for a direct appeal. State v. Kinne, 161 N.H. 41, 45 (2010). Therefore, if a habeas petition is based on a claim that could have been

brought in a direct appeal, it may be procedurally barred. <u>Sleeper v. Warden, N.H. State Prison</u>, 155 N.H. 160, 162-63 (2007). However, an exception to the general rule involves claims of ineffective assistance of counsel based upon alleged trial errors. <u>State v. Pepin</u>, 159 N.H. 310, 313 (2009); <u>see</u> <u>State v. Veale</u>, 154 N.H. 730, 736 (2007) (explaining that ineffective assistance of counsel claims are best brought in a collateral attack). Under that exception, an allegation of ineffective assistance of counsel need not be raised on direct appeal and may be raised collaterally by filing a petition for a writ of habeas corpus after the time for a direct appeal has expired, if the petitioner can establish "harmful constitutional error." <u>Kinne</u>, 161 N.H. at 45; <u>see</u> <u>Bonser v. Courtney</u>, 124 N.H. 796, 807-08 (1984); <u>cf</u>. <u>Humphrey v. Cunningham, Warden</u>, 133 N.H. 727, 732 (1990) (explaining that we will not consider an issue raised under the guise of an ineffective assistance of counsel claim that we have previously considered as part of a petitioner's original appeal).

We disagree with the Warden that Mallard's motion for a new trial and his petition for a writ of habeas corpus were "functionally equivalent" in the circumstances presented here. Although the underlying trial error asserted in both pleadings was ineffective assistance of counsel, the issue in the motion for a new trial was whether Mallard's trial counsel was ineffective for failing to object to a curative instruction and for failing to cross-examine the victim about certain text messages, while the issue in his habeas petition is whether his trial counsel was ineffective for referring to him as a "big, menacing black guy." Thus, even if Mallard's motion for a new trial were treated as the equivalent of a petition for a writ of habeas corpus, making this his second habeas petition, the second petition is not procedurally barred as the issues raised in the two pleadings are different. <u>See</u> <u>Gobin v. Hancock</u>, 96 N.H. 450, 451 (1951) (explaining that the doctrine of res judicata does not apply to habeas corpus proceedings); <u>cf</u>. <u>Petition of Moebus</u>, 74 N.H. 213, 215 (1907) (stating that "repeated applications for a writ of habeas corpus introducing no new facts material to the issue will ordinarily be summarily disposed of").

Under RSA chapter 526, a petition for a new trial may be granted, if "filed within three years after the rendition of the judgment complained of," RSA 526:4 (2007), "in any case when through accident, mistake or misfortune justice has not been done and a further hearing would be equitable," RSA 526:1 (2007). In contrast, a petition for a writ of habeas corpus "provides a remedy for constitutional errors at the trial without limit of time." <u>State v. Daigle</u>, 114 N.H. 679, 681 (1974) (quotation and ellipsis omitted). Under the applicable law, Mallard was not required to raise his claim of ineffective assistance of counsel on direct appeal, <u>Kinne</u>, 161 N.H. at 45, he was permitted to move for a new trial under RSA chapter 526, and he was entitled to collaterally attack trial errors by way of a petition for a writ of habeas corpus if harmful constitutional error could be established, <u>Bonser</u>, 124 N.H. at 807-08, <u>see</u> RSA ch. 534.

6

We likewise disagree with the Warden that Mallard's petition is barred by laches.  Like the trial court, the Warden cites Roy v. Perrin, 122 N.H. 88 (1982), for the proposition that, because nine years have passed between Mallard's conviction and his petition for a writ of habeas corpus, his petition is untimely.  However, we did not hold in Roy, as the trial court reasoned, that because the petitioner "unjustifiably remained silent" about his claim for four years, his habeas corpus petition was barred.  Rather, we rejected the petition because the petitioner had failed to comply with the contemporaneous objection rule by not raising his objections to the sentencing procedures at issue at the sentencing hearing.  Id. at 99-100.  We further noted that the petitioner had remained silent for four years before raising his objection, despite having the opportunity to do so, including on direct appeal.  Id. at 100.

Furthermore, even if we were to assume without deciding that laches could apply to a habeas petition, we would conclude that the Warden has not met his burden of proof.  See Village Green Condo. Ass'n v. Hodges, 167 N.H. 497, 505 (2015).  "Because it is an equitable doctrine, laches will constitute a bar to suit only if the delay was unreasonable and prejudicial."  Id. (quotation omitted).  The Warden simply suggests that, because at the evidentiary hearing on the sufficiency of trial counsel's representation "trial counsel struggled to recall details from trial and his own internal thought process after so many years," the testimony of trial witnesses "would be at least as challenged."  However, as the habeas court found, the Warden "has not alleged any specific threat of trial prejudice."

Accordingly, we reverse the habeas court's dismissal of the petition on procedural grounds and address the merits of Mallard's habeas claim.

B.  Ineffective Assistance of Counsel

The effective assistance of counsel is guaranteed by Part I, Article 15 of the New Hampshire Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution.  See State v. Thompson, 161 N.H. 507, 528 (2011).  To successfully assert a claim for ineffective assistance of counsel, a habeas petitioner must show that his "counsel's representation was constitutionally deficient" and that "counsel's deficient performance actually prejudiced the outcome of the case."  State v. Brown, 160 N.H. 408, 412 (2010).  We review de novo the ultimate determination of whether both the performance and prejudice prongs of the ineffectiveness inquiry are met.  State v. Wilbur, 171 N.H. 445, 448 (2018).  Because the standard for determining whether a petitioner has received ineffective assistance of counsel is the same under both the State and Federal Constitutions, we will examine the constitutional competency of counsel's performance under the State Constitution, and rely upon federal case law only for guidance.  State v. Kepple, 155 N.H. 267, 269 (2007).

7

On appeal, it is undisputed that Mallard proved that trial counsel's performance was constitutionally deficient, as the Warden does not argue otherwise. Thus, the only issue before us is whether that deficient performance resulted in prejudice. A criminal defendant is prejudiced by constitutionally deficient representation if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Thompson, 161 N.H. at 528. In the context of a jury trial, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Mallard asserts that he met the prejudice prong of the ineffective assistance inquiry because trial counsel's "overt reference to a racial stereotype infected [his] trial and effectively served as an invitation to the all-white jury to decide the case based on [his] race and not on the evidence of his guilt or innocence." Mallard underscores that, in its narrative order, the habeas court itself twice acknowledged that trial counsel's characterization of Mallard appealed to the jurors' implicit biases and the court recognized that the jurors "only heard" the "horrible racist trope."

We held decades ago that injecting racial considerations into a case can taint the proceedings and deprive the defendant of a fair trial, thereby requiring a new trial. LeBlanc v. American Honda Motor Co., 141 N.H. 579, 580-81 (1997). We reasoned that an appeal to bias, whether indirect, implied, direct, or express, is "an affront to the court" and recognized that "it will be an unusual case in which the invocation of racial or ethnic bias should not result in a mistrial." Id. at 583. Moreover, while "[a]ll forms of improper bias pose challenges to the trial process[,] . . . there is a sound basis to treat racial bias with added precaution." Pena-Rodriguez v. Colorado, 580 U.S. 206, 225 (2017). Racial bias "implicates unique historical, constitutional, and institutional concerns" and is "a familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice." Id. at 224.

The Warden argues that this is not a case in which prejudice should be presumed when "this case involved a single fleeting reference to [Mallard's] race by his own counsel in the middle of witness testimony." As we recognized in LeBlanc, however, despite the fact that an improper reference to race may be brief, "when an elephant has passed through the courtroom one does not need a forceful reminder." LeBlanc, 141 N.H. at 583 (quotation omitted). This observation is particularly apt in the case before us where the jury heard evidence for less than three hours.

The United States Supreme Court rejected the characterization of two references to race as "de minimis." Buck v. Davis, 580 U.S. 100, 121 (2017) (quotation omitted). Where the testimony "appealed to a powerful racial

8

stereotype—that of black men as 'violence prone,'" id., the Court reasoned that "the impact of that evidence cannot be measured simply by how much air time it received at trial or how many pages it occupies in the record. Some toxins can be deadly in small doses." Id. at 122.

Under the circumstances presented in this case, we discern no principled reason for treating differently an improper reference to race made by defense counsel rather than by the prosecutor. As the habeas court recognized, had the prosecutor appealed to the jurors' implicit racial biases, "the remedy would have been a mistrial." However, "it is inappropriate to allow race to be considered as a factor in our criminal justice system . . . whether the prosecution or ineffective defense counsel initially injected race into the proceeding." Id. at 124 (quotation omitted); see Texas Employers' Ins. Ass'n v. Guerrero, 800 S.W.2d 859, 866 (Tex. Ct. App. 1990) (holding that "incurable reversible error occurs whenever any attorney suggests, either openly or with subtlety and finesse, that a jury feel solidarity with or animus toward a litigant or a witness because of race or ethnicity" (emphasis added)). Simply, such an improper reference to race has no place in a courtroom.

Trial counsel's improper appeal to racial bias in Mallard's criminal case "effectively invited the jury to make a decision based on a characterization of the defendant and not on the evidence of his guilt or innocence." Wallace v. State, 768 So. 2d 1247, 1250 (Fla. Dist. Ct. App. 2000); see People v. Sanders, 182 N.E.3d 151, 156 (Ill. App. Ct. 2020) (in referring to his client as a "[b]ig black guy" and "a big scary black guy," defense counsel "created a prejudicial lens for the jury against" the defendant). Under these circumstances, we cannot determine the extent to which the jury may have been influenced by the "horrible racist trope" when reaching its verdict. See Walton v. City of Manchester, 140 N.H. 403, 408 (1995). Accordingly, we conclude that Mallard has established a probability sufficient to undermine confidence in the outcome of his trial, thereby satisfying that his trial counsel's deficient performance actually prejudiced the outcome of the case. See Thompson, 161 N.H. at 528.

Because Mallard prevails on his state claim, we need not address the Federal Constitution. See id. Mallard is entitled to relief for the deprivation of his right to effective assistance of counsel and to a fair trial and, therefore, we remand the case to the superior court for further proceedings consistent with this decision.

<u>Reversed and remanded</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

9