Hillsborough-northern judicial district
No. 2902-770

## DENNIS W. MCLAUGHLIN, SR. & a.

### v.

## FISHER ENGINEERING

Argued: September 11, 2003
Opinion Issued: October 27, 2003

*McDowell & Osburn, P.A.*, of Manchester (*Joseph F. McDowell, III* and *David C. Dunn* on the brief, and *Mr. McDowell* orally), for the plaintiffs.

*Friedman Gaythwaite Wolf & Leavitt*, of Portland, Maine (*Harold J. Friedman & a.* on the brief, and *Martha C. Gaythwaite* orally), for the defendant.

DUGGAN, J. The plaintiffs, Dennis W. McLaughlin, Sr., Kathryn McLaughlin and Ellen M. Faunce, individually and as administrators of their sons' estates, brought an action in Superior Court (*Mangones*, J.) against the defendant, Fisher Engineering (Fisher), manufacturer of the Fisher snowplow and snowplow mount, alleging strict products liability, negligence and failure to warn. The jury returned a verdict for Fisher. We affirm.

From the evidence presented at trial, the jury could have found the following facts. On October 25, 1997, Timothy McLaughlin and Matthew Wood were passengers in a Subaru traveling south on Route 114 in Goffstown. When the driver of the Subaru, Kyle Elliott, attempted to turn left onto St. Anselm's Drive, the Subaru was struck on its right side by a pick-up truck traveling north on Route 114. A Fisher snowplow mount was bolted to the front of the pick-up truck. McLaughlin, the front-seat passenger, was struck in the head and face by the snowplow mount and died at the scene of the accident. Wood, who was seated behind McLaughlin, was not struck by the snowplow mount but suffered severe injuries that caused his death two days later.

The snowplow mount attached to the front of the pick-up truck and its accompanying snowplow blade were manufactured by Fisher in 1982. The

snowplow mount was designed to hold the snowplow blade in place. At the time of the accident, however, no snowplow blade was attached to the front of the pick-up truck.

The plaintiffs sued Fisher alleging that it was liable for enhanced injuries under theories of strict products liability, negligence, and failure to warn both before and after the 1982 sale of the snowplow and its mount. After the jury returned a verdict in favor of Fisher, the trial court denied the plaintiffs' motion to set aside the verdict.

On appeal, the plaintiffs argue that the trial court erred in: (1) refusing to allow them to introduce evidence of fourteen other claims against Fisher; (2) excluding a photograph that depicted the injuries to McLaughlin's head and face; (3) allowing Fisher to introduce evidence of McLaughlin's substance abuse and Wood's incarceration; (4) permitting Fisher's accident reconstruction expert to testify concerning bio-mechanical issues; and (5) allowing Fisher's counsel to make statements during trial that the non-party driver of the Subaru was at fault. We address each argument in turn.

We review the trial court's rulings on admissibility of evidence under an unsustainable exercise of discretion standard. *See State v. Pelletier*, 149 N.H. 243, 249 (2003). "Unless a party establishes that such a ruling was clearly untenable or unreasonable to the prejudice of his case, it will not be disturbed." *Id.*

## I. Evidence of Other Lawsuits

Prior to the start of the trial, Fisher moved *in limine* to exclude evidence of fourteen other lawsuits filed against it concerning its snowplow mount, arguing that evidence of other lawsuits was more prejudicial than probative and was based upon hearsay. It also argued that introducing that evidence would confuse the jury and result in unnecessary delay. The plaintiffs argued that evidence of other lawsuits was admissible: (1) to prove the existence of a particular physical condition, situation or defect; (2) to help show that the defect or dangerous condition caused the injury; (3) to show the risk that Fisher's conduct created; and (4) to prove that Fisher knew, or should have known, of the danger.

The trial court ruled that "lawsuits arising after the 1982 sale and installation date of the frame [were] not sufficiently relevant," but evidence of other lawsuits "might be found relevant if plaintiff[s] were to establish the criteria concerning a duty to warn after the sale." Moreover, the plaintiffs were not precluded from introducing statements made by Fisher in the prior lawsuits if the plaintiffs qualified those statements as admissions.

Pursuant to New Hampshire Rule of Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However,

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.H. R. Ev. 403.

■ We cannot say that the trial court's decision to exclude evidence of other lawsuits was clearly untenable or unreasonable to the prejudice of the plaintiffs' case. *See Pelletier,* 149 N.H. at 249. We agree with the plaintiffs that evidence of other lawsuits was relevant to the issue of Fisher's knowledge that the snowplow mount was potentially dangerous. However, evidence of other lawsuits was not necessary to prove Fisher's knowledge. Prior to trial, Fisher admitted that it recognized "a risk of automobile accidents involving vehicles, one of which has a snow blade hitch assembly such as the one involved in this accident, without a snow blade affixed to the assembly." At trial, the plaintiffs elicited testimony from a number of witnesses, including Fisher's expert and employees, concerning their knowledge of the existence of other claims against Fisher. Given such testimony, admitting specific evidence concerning fourteen other claims was likely to produce a trial within a trial and confuse the jury. *See State v. Weeks,* 140 N.H. 463, 467 (1995). Thus, on this record, the plaintiffs have failed to demonstrate that the probative value of the evidence of other lawsuits was not substantially outweighed by the danger of misleading the jury or needless presentation of cumulative evidence. We find that the trial court exercised its sound discretion in balancing the interests on both sides. *Id.*

## II. Exclusion of Photograph

Next, the plaintiffs argue that the trial court's decision to exclude a color photograph taken at the scene of the accident that depicts the outline of the snowplow mount on McLaughlin's head and face was erroneous.

Originally, the trial court ruled that the plaintiffs would be allowed to introduce the photograph to "fairly meet the assertions of the defendant" that the snowplow mount did not cause the deaths of the decedents. On the second day of trial, however, Fisher stipulated that "as a result of the snow [*sic*] mount coming into contact with Mr. McLaughlin, . . . he died of a

brain injury." After Fisher agreed to offer this stipulation in open court, the trial court reversed its prior decision, finding that the probative value of the photograph was "somewhat lessened" by the stipulation but that the prejudicial effect of the photograph remained the same. Despite the stipulation, however, Fisher continued to maintain that McLaughlin would have died as a result of other injuries. Consequently, the trial court ruled that in lieu of admitting the photograph, the plaintiffs could elicit testimony describing McLaughlin's injuries in a "verbal fashion" and could use a "computer image or a drawn image of the injuries incurred by Timothy McLaughlin."

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.H. R. Ev. 403; *Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 346 (1999). "[A] trial judge is granted broad discretion when balancing the probative value of evidence against the possible prejudice resulting from its admission." *Kallgren v. Chadwick*, 134 N.H. 110, 115 (1991). We will uphold the trial court's determination unless the "ruling was clearly untenable or unreasonable to the prejudice of [the plaintiffs'] case." *State v. Stayman*, 138 N.H. 397, 402 (1994) (quotation omitted).

Here, after Fisher stipulated that McLaughlin died as a result of his face and head coming into contact with the snowplow mount, the trial court properly reapplied the Rule 403 balancing test. We disagree with the plaintiffs' argument that the photograph was necessary to prove that the snowplow mount was unreasonably dangerous. The plaintiffs had other evidence of the specific injuries that McLaughlin sustained to his face and neck. Because the trial court could properly find that the probative value of the gruesome photograph was substantially outweighed by the danger of unfair prejudice to Fisher, we cannot conclude that the trial court erred by excluding it.

### III. Evidence of Substance Abuse and Incarceration

The plaintiffs next argue that the trial court erred in permitting Fisher to introduce evidence of McLaughlin's substance abuse and of Wood's incarceration. In motions *in limine* filed prior to trial, the plaintiffs argued that this information was not relevant and extremely prejudicial. In response, Fisher argued that the information was relevant to rebut the plaintiffs' claims for hedonic damages and loss of income.

#### A. McLaughlin's Substance Abuse

At trial, Fisher asked the plaintiffs' economist, John Romps, whether the plaintiffs had provided him with McLaughlin's treatment record from

the Farnum Center, where McLaughlin underwent treatment after an arrest for driving while intoxicated. Over the plaintiffs' objection, the trial court permitted Fisher to cross-examine Romps regarding whether McLaughlin's treatment record was the type of information that he would consider in rendering an opinion concerning future earning potential. Fisher was also permitted to question Romps as to whether his economic calculations would change if he knew that in the summer prior to the accident, McLaughlin used heroin, "Special K," methamphetamines, LSD and alcohol. The trial court gave a cautionary instruction, warning the jury that the information was

> only to be used for the purpose of considering the issues such as economics in this matter . . . . What you may not do is say this person may be a bad person or have bad character and therefore I am not going to consider an award of anything because he is a bad person . . . .

■ In forming an opinion, an expert may rely on facts or data not admissible in evidence, assuming those facts are of a type reasonably relied upon by experts in that particular field. N.H. R. Ev. 703. Likewise, "Rule 705 permits the cross-examiner to require the expert to reveal otherwise-inadmissible underlying information before the jury, subject only to [Rule] 403's prejudice/probative value balancing test." *United States v. A & S Council Oil Co.*, 947 F.2d 1128, 1134 (4th Cir. 1991) (holding that lower court's refusal to allow defendant to fully explore bases of expert's opinion on cross-examination was error); *see also* N.H. R. Ev. 705. Moreover, on cross-examination, "[c]ounsel is . . . permitted to test the knowledge and fairness of the expert by inquiring into what changes of conditions would affect his opinion." *People v. Williams*, 692 N.E.2d 1109, 1126 (Ill.), *cert. denied*, 525 U.S. 882 (1998). An expert may thus be cross-examined in order "to ascertain what factors were taken into account and what ones were disregarded in arriving at these conclusions." *Id.*

■ We cannot conclude that the trial court's decision to permit Fisher to introduce evidence of McLaughlin's substance abuse was erroneous. When the plaintiffs' expert testified about the likely economic loss to McLaughlin's estate as a result of his early death, Fisher was entitled to cross-examine him about the factors that he took into account and those that he disregarded in forming his opinion, including the potential impact on McLaughlin's estimated lifetime earnings due to his substance abuse. *See id.* The trial court was left to determine whether the probative value of the information was substantially outweighed by the danger of unfair prejudice to the plaintiffs. *See A & S Council Oil Co.*, 947 F.2d at 1134. We

conclude that the trial court could properly find that the probative value was not substantially outweighed by the danger of unfair prejudice to the plaintiffs. Moreover, the trial court gave a cautionary instruction, informing the jury that evidence of McLaughlin's substance abuse was to be considered "solely on the issue of earning capacity." Because Fisher was entitled to cross-examine the plaintiffs' expert about the bases of his opinion and because the trial court properly conducted a Rule 403 balancing test, we cannot conclude that the trial court's ruling constituted an unsustainable exercise of discretion.

### B. Wood's Incarceration

We next address the plaintiffs' argument that the trial court erred in permitting Fisher to introduce evidence of Wood's periods of incarceration. During direct examination of Romps, plaintiffs' counsel asked if he was aware that Wood had a felony conviction. Romps responded that he was aware of Wood's felony conviction when he wrote his addendum report, but that it did not change his opinion.

In addition, Nicole Wood, Wood's sister, testified that Wood was working at McDonald's and another local restaurant, as well as taking college courses to become an electrician. Whether Wood was working or taking classes at the time of the accident was not explained, as no specific timeframe for these activities was suggested. Later, Fisher sought to read into evidence the periods of Wood's incarceration in order to show not only that Wood had been incarcerated, but also that he had been incarcerated up to the day prior to the accident, and thus was not employed or taking college courses at the time of the accident. Over the plaintiffs' objection, the trial court permitted Fisher to read the following statement to the jury: "[T]he records in this case would show that Matthew Wood was incarcerated from June 2, 1995 to August 3, 1996 and from October 12, 1996 to November 12, 1996 and then from December 18, 1996 to October 24, 1997." Immediately thereafter, the trial court gave the following cautionary instruction to the jury:

> I have allowed that information to be presented to you solely for consideration in terms of plaintiff Wood's earning capacity and also to address issues that have been spoken to by his sister . . . . You are not by any stretch of the imagination to consider that in the sense that he had been convicted of a crime and he had been incarcerated and therefore he is not equal before you and the law.

Under our deferential standard of review, we cannot conclude that the trial court erred when it permitted Fisher to read Wood's periods of

incarceration to the jury. We agree with the trial court that Wood's record of incarceration was relevant to the issue of loss of income. We do not find error in the trial court's determination that the probative value of the information was not substantially outweighed by the danger of unfair prejudice. In addition, the trial court issued a cautionary instruction to the jury, and we presume that the jury followed this instruction. *See State v. Glodgett*, 148 N.H. 577, 580 (2002).

*IV. Expert Testimony*

Next, the plaintiffs argue that the trial court erred in allowing the defendant's accident reconstruction expert, William Howerton, to testify about bio-mechanical issues which were not properly disclosed as the subject of his expected testimony. In addition, the plaintiffs argue that Howerton was not qualified to testify to bio-mechanical opinions.

On May 1, 2001, Fisher disclosed its expert witnesses to the plaintiffs. Fisher stated that Howerton was expected to testify that: "In a side impact collision with a [force] of this magnitude, the occupants ... would be expected to sustain severe, life threatening injuries, regardless of whether or not a plow structure was attached." At his September 6, 2002 deposition, Howerton stated that he did not hold himself out to be an expert in bio-mechanics, but that he planned to testify about the kinematics of what direction and with what velocity the occupants of a car would travel during an accident. Howerton further stated that removing the snowplow mount would not "change the outcome of this accident." When the plaintiffs objected to Howerton "testifying about anything at all having to do with bio-mechanics," the trial court ruled that because of the prior disclosure, Howerton would be permitted to testify.

Over the plaintiffs' objection, Howerton testified at trial that both of the plaintiffs' decedents would have died in the accident even if the pick-up truck had not been equipped with the snowplow mount. Fisher was not permitted to ask Howerton if he agreed with another expert that death would ensue if McLaughlin's aorta was cut, but Fisher was permitted to ask Howerton if, in his opinion, McLaughlin's head would have hit the hood of the pick-up truck even if the snowplow mount was not present.

In a superior court action, a party is entitled to disclosure of the opposing party's experts, the substance of the facts and opinions about which they are expected to testify and the basis of those opinions. *Wong v. Ekberg*, 148 N.H. 369, 372 (2002); *see also* SUPER. CT. R. 35(f). Failure to supply this information should result in exclusion of the expert testimony unless good cause is shown to excuse the failure to disclose. *Wong*, 148 N.H. at 372.

■ The plaintiffs' argument that the trial court "erred in allowing defendant's accident reconstruction expert to testify concerning bio-mechanical issues including alternate causes of death which were not properly disclosed" is without merit. On May 1, 2001, more than one year prior to the start of the trial, Fisher disclosed Howerton as an accident reconstruction expert, and disclosed that Howerton was expected to testify that in this type of accident, McLaughlin and Wood would be expected to sustain severe, life-threatening injuries, regardless of whether the snowplow mount was attached to the front of the pick-up truck. Moreover, the plaintiffs had the opportunity to depose Howerton. Because the defendant properly disclosed Howerton to the plaintiffs, we conclude that the trial court did not err in finding that Fisher complied with the superior court disclosure requirements.

We will reverse a trial court's determination on expert qualification only when it results from an unsustainable exercise of discretion. *Pelletier*, 149 N.H. at 250. "While the trial court may rule that a certain subject of inquiry requires that a member of a given profession . . . be called, usually a specialist in a particular branch within a profession will not be required." *Baker Valley Lumber v. Ingersoll-Rand*, 148 N.H. 609, 612-13 (2002) (quotation omitted).

We are not persuaded that the trial court erred in allowing Howerton to testify about bio-mechanical issues. Howerton's extensive background as an accident reconstruction expert was sufficient to qualify him to offer the opinion that the plaintiffs' decedents would have died even if the snowplow mount had been removed from the pick-up truck. The trial court did not allow Fisher to ask Howerton if he agreed that death would ensue if McLaughlin's aorta was cut, an opinion that was clearly beyond the scope of Howerton's expertise. We conclude that there was no unsustainable exercise of discretion in the trial court's decision to allow Howerton's challenged testimony.

*V. Remarks Made By Counsel*

Finally, the plaintiffs argue that the trial court erred in allowing Fisher's counsel to comment throughout the trial that the non-party driver of the Subaru was at fault for the deaths of the plaintiffs' decedents. In addition, the plaintiffs argue that the trial court erred in denying their motion to set aside the verdict on this basis.

Prior to the start of the trial, the plaintiffs filed several motions *in limine* to preclude Fisher from introducing the affirmative defenses of comparative fault as well as superseding and intervening cause, because Fisher failed to raise these defenses in a timely manner. The trial court

ruled that because the plaintiffs did not receive adequate notice of the affirmative defenses, Fisher was precluded from raising them at trial.

Numerous times during the trial, Fisher referred to the actions of Kyle Elliott, the driver of the Subaru in which McLaughlin and Wood were riding at the time of the accident. In his opening statement, defense counsel told the jury that "on the spur of the second," Elliott decided to make a left turn. In concluding his opening statement, counsel further stated that: "When the evidence is in, the evidence will show that there was one cause and solely one cause for the unfortunate deaths of these two young men and it was Mr. Elliott's conduct . . . ." In response to the plaintiffs' objection, the trial court issued a cautionary instruction informing the jury that Elliott's liability was not at issue. During the testimony of Michael Brassard, the driver of the pick-up truck, the trial court issued a second cautionary instruction reminding the jury that "what is not at issue is the legal conduct of the driver of the Subaru." In addition, defense counsel made reference to Elliott during his closing argument, stating that once Elliott made the turn, "the fate of his two passengers was sealed." At the conclusion of Fisher's closing argument, the trial court issued a third cautionary instruction to the jury.

In their motion to set aside the verdict, the plaintiffs argued that "the jury fell into plain mistake based upon the defendant's continual assertion throughout the trial that the accident-causing conduct of Kyle Elliott brought about this accident and the deaths of Timothy McLaughlin and Matthew Wood." The trial court denied the plaintiffs' motion.

As a general rule, "statements and arguments that appeal to the emotions or prejudices of jurors may constitute grounds for a new trial when the statements or arguments take the form of counsel's presentation of facts which have not been introduced in, or are not fairly inferable from, evidence at trial." *Walton v. City of Manchester*, 140 N.H. 403, 407 (1995). In these circumstances, it is squarely within the trial court's discretion "to sustain an objection, to offer a curative instruction, or to grant a mistrial." *Id.* at 408. In *LeBlanc v. American Honda Motor Co.*, 141 N.H. 579, 581-82 (1997), the plaintiff's trial counsel made remarks that were intended to appeal to the racial prejudices of the jury. After the remarks were made, the trial court did not give an immediate curative instruction. *Id.* at 582, 584. In granting a new trial, we held that: "To justify a mistrial, remarks or the conduct must be more than merely inadmissible; they must constitute an irreparable injustice that cannot be cured by jury instructions." *Id.* at 581 (quotation omitted).

■ Here, several witnesses, including the experts called by both parties, testified that the Subaru turned left and crossed directly in front of the

pick-up truck. Therefore, the fact that Elliott made a sharp left turn in front of the pick-up truck was obvious to the jury. In contrast to *LeBlanc*, where the plaintiff's counsel made inflammatory remarks intended to encourage the jury to make a decision based on racial bias, *id.* at 581-82, in this case, Fisher's counsel recited facts that were introduced through witness testimony. Although we are troubled by counsel's repeated failure to comply with the pre-trial ruling, the remarks made by counsel did not rise to the level of irreparable injustice that could not be cured by jury instructions. Furthermore, the trial court gave three cautionary instructions to the jury. Because we presume that the jury followed the trial court's instructions, *see Glodgett*, 148 N.H. at 580, we do not believe that there was an irreparable injustice that was not cured by the trial court's cautionary instructions.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.