**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0720, <u>Joseph Kelly & a. v. Pine Trail Cottages Condominium Association & a.</u>, the court on May 6, 2021, issued the following order:**

Having considered the opening and reply briefs of plaintiff Glen Schaff, the brief of defendants Pine Trail Cottages Condominium Association (Association), Dennis J. Marcucci, and Elizabeth McKinley, and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in this case. Schaff appeals an order of the Superior Court (<u>O'Neill</u>, J.), issued after a bench trial, denying his requests for specific performance of his settlement agreement with the Association and an award of attorney's fees. We affirm in part, reverse in part, and remand.

I. Facts

Schaff has owned unit 15 at Pine Trail Cottages on Lake Winnipesaukee since 2004. When he purchased his unit, he was unaware that the septic alarm was located underneath his porch. He did not become aware of that fact until approximately six years after the purchase when the alarm began sounding.

Because Schaff complained about the noise, sometime between 2009 and 2011, the control box for the alarm was moved to the outside back wall of his porch, near the electric meter and circuit breaker box that were already there. The electric meter services the electricity to the dock, the septic pumps, and the septic alarm. Inside the circuit breaker box are two circuit breakers. One circuit breaker, labeled "sewer," services the septic system; the other circuit breaker, labeled "Ice Eaters," is a ground fault breaker that services the outlets on the docks, which are needed to run the "ice eaters" on the main dock in the off season.

According to Schaff, the septic alarm has interfered with his use of the property because the alarm is "easily tripped and set[s] off a braying siren multiple times a day." In 2012, he and other unit owners sued the Association and members of its board of directors (Board), including Marcucci and McKinley, alleging that the defendants had violated the Association's rules and regulations. In 2014, Schaff and another plaintiff entered into a settlement agreement (the Agreement) with the Association, Marcucci, McKinley, and another defendant, which disposed of several claims. The remaining claims were addressed in a bench trial.

The provision in the Agreement related to the septic alarm provides:

Septic Alarm – The Board . . . agree[s] that the May 2014 annual meeting will include an agenda item seeking a vote from all unit owners on the issue of whether to replace the existing septic alarm located on the deck of Unit 15 with a silent alarm system. If a majority of the unit owners vote in favor of a silent alarm system, the Board . . . agree[s] that the current septic alarm will be replaced with a silent alarm system in a reasonable period of time after the meeting (but no later than September 1, 2014) and that the silent alarm system will be placed in a location other than Unit 15, all at the expense of the [Association]. If a majority of the unit owners vote against a silent alarm system, the Board . . . agree[s] that the Board shall cause the current alarm system on Unit 15 [to] be relocated to the tree located between Unit 15 and Unit 3 that currently has lights attached to it in a reasonable period of time after the meeting, but no later than September 1, 2014. The [Association] and Plaintiffs agree to share the costs of moving the septic alarm system from Unit 15 to said tree on a 50/50 basis.

The Agreement also provides: "Changes to the Settlement Agreement - This Settlement Agreement may not be changed or modified except by agreement in writing signed by each of the Parties."

As a result of the Agreement, the control box of the septic alarm was removed from the outside back wall of Schaff's porch to a wooden backboard, located more than 20 feet from his unit. The electric meter was not moved, and the circuit breaker box was replaced with a new one.

In 2016, Schaff sued the Association, alleging that the Association had breached the Agreement provision related to removing the septic alarm from his unit, had retaliated against him after entering into the Agreement, had harassed him by fining him, had "illegally trespassed, excavated and installed electrical equipment on" his unit, and had breached fiduciary duties "by failing and/or refusing to uniformly and fairly enforce the Articles of the Condominium Declaration" by engaging in certain activities.

According to Schaff, the Association moved for summary judgment in the 2016 case. Thereafter, the trial court dismissed the claims concerning the alleged breach of the Agreement's septic alarm provision without prejudice to Schaff's re-filing them in a motion to bring forward and reopen the 2012 case. Specifically, according to the motion to bring forward, as to the breach of the Agreement's septic alarm provision, the trial court allowed "paragraphs 4 through 7 [and] 16 through 20" of the 2016 complaint to be re-filed in the motion. The record submitted on appeal does not indicate whether the

remaining complaint allegations were resolved in the summary judgment proceedings, at trial, or through settlement.

Schaff then moved to reopen the 2012 case, alleging that the Association, Marcucci, McKinley, and another defendant had violated the Agreement's septic alarm provision by: (1) failing to record in the minutes of the Association's 2014 annual meeting that a majority of unit owners had voted in favor of installing a silent septic alarm and, instead, recording that the vote authorized the Board "to investigate the costs involved" with "updating the sewer alarm" and to "use their discretion in determining the alarm type and placement"; (2) failing to install a silent septic alarm; and (3) sending him an invoice for $1,675 for relocating the septic alarm. Schaff asked the court to order the Association to "remove any electrical box or equipment mounted on Schaff's home or within his limited common area . . . and to install a silent alarm as voted upon by the majority of [unit] owners." Schaff also asked for an award of reasonable attorney's fees as set forth in the Agreement.

There was no objection to the motion to reopen. Accordingly, the court granted it. In his pretrial statement, Schaff purported to add claims that the Association had breached the Agreement by: (1) failing to relocate the audible septic alarm to a tree between units 15 and 3 and, instead, mounting it "on new posts in front of [Schaff's] home"; (2) failing to "remove the electrical service for the Septic Alarm System and mount[ing] a new large grey electrical box on [his] home"; and (3) "[c]hanging the alarm placement" without obtaining his written approval as required by the Agreement.

Following a three-day bench trial, the trial court determined that Schaff was not entitled to either specific performance of the Agreement's septic alarm provision or an award of attorney's fees. Schaff filed a motion to reconsider, which the trial court denied. He filed this appeal thereafter.

II. Analysis

A. Standard of Review

In reviewing a trial court decision rendered after a trial on the merits, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. O'Malley v. Little, 170 N.H. 272, 275 (2017). Our standard of review is not whether we would have ruled differently, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id. (quotation omitted). We review the trial court's legal rulings and its application of law to the facts de novo. See id.

3

B.  Specific Performance

Specific performance is an equitable remedy.  Anna H. Cardone Revocable Trust v. Cardone, 160 N.H. 521, 528 (2010).  "The propriety of affording equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case."  Found. for Seacoast Health v. Hosp. Corp. of America, 165 N.H. 168, 179 (2013) (quotation omitted).  We will uphold a trial court's equitable order unless it constitutes an unsustainable exercise of discretion.  Id.  In doing so, we determine whether the record establishes an objective basis sufficient to sustain the discretionary judgment made.  Benoit v. Cerasaro, 169 N.H. 10, 20 (2016).  The party asserting that the trial court's order is unsustainable has the burden of demonstrating that the ruling was unreasonable or untenable to the prejudice of that party's case.  Id.

The trial court gave two rationales for declining to order specific performance.  The court impliedly determined that specific performance of the Agreement's septic alarm provision was impossible, and the court determined that Schaff was "not entitled to specific performance because [any] breach was not material."  Because we conclude that the trial court's first rationale does not constitute an unsustainable exercise of discretion, we do not address its second rationale.

Impossibility of performance is a defense to an action for specific performance.  See J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So. 2d 896, 897 (La. 1981); see also Hawthorne Trust v. Maine Savings Bank, 136 N.H. 533, 539 (1992) ("In land contracts, specific performance will be decreed unless, in the discretion of the trial court, to do so would be inequitable or impossible.").  Here, the trial court impliedly found that it was impossible both to replace the alarm on the back of Schaff's porch with a silent alarm and to relocate the audible alarm to a tree between units 3 and 15, as set forth in the Agreement.  The testimony of Marcucci and McKinley support these implied findings.  Marcucci testified that he understood that a silent alarm could not be furnished because "no service . . . would deal with" such an alarm, and that it was "impossible" to mount the audible alarm to a tree because doing so would violate "the electrical code."  McKinley testified that the audible alarm was not relocated to the tree because "[i]t wasn't possible to put it on the tree," as doing so failed to "meet the electrical codes of the State of New Hampshire."  She also testified that she understood that there was no septic service available to respond to a silent alarm.

Schaff argues that the trial court erred by relying upon the testimony of Marcucci and McKinley because it contained inadmissible hearsay.  We review the trial court's decisions as to the admissibility of evidence under our unsustainable exercise of discretion standard.  McLaughlin v. Fisher Eng'g, 150 N.H. 195, 197 (2003).  We will not disturb the court's ruling unless the

4

appealing party establishes that it is clearly untenable or unreasonable to the prejudice of its case.  Id.

The record on appeal establishes that Schaff's attorney raised a hearsay objection three times during the testimony in question, and that the trial court overruled the objection only once.  During McKinley's testimony, the court overruled Schaff's counsel's hearsay objection as follows:

> Q  It's your testimony that Lamprey Septic told you that they did not have a service of that type?
> A  That's correct.
> Q  So we have the technology to call someone, but we have no one to call.  Is that correct? [Schaff's Counsel]: Objection.  That's --
> A  Again, I'm not sure.  I'd say no.
>    [Schaff's Counsel]:  -- that would be hearsay, and plus, she doesn't even remember hearing it.
>    THE COURT:  I'm going to allow the witness to respond.
>    Can you respond, ma'am?
> A  I would say no.

To the extent that Schaff contends that the trial court unsustainably exercised its discretion by overruling his counsel's third hearsay objection, we disagree.  The testimony at issue is cumulative of prior testimony that Schaff's own attorney elicited from McKinley:

> Q  Yes. You got a proposal on August 11th, 2014, from Lamprey Septic to install a remote alarm dialer for 985 dollars, right?
> A  I'd say it's from Brian Blackadar.
> Q  Yes, to Lamprey Septic, correct?
> A  Correct, I guess; I don't know.
> Q  Saying that they couldn't -- that they said they could install a dial-up and they said how much the service would be?
> A  Okay?
> Q  So why wasn't that done?  It was one-third of the cost that you paid.
> A  I can just tell you what the Lamprey contractor told us, that the service wasn't available.
> Q  It says the service is available, though, on Exhibit 21.
> A  Well, the -- the -- the contractor that stood in front of us that day said it wasn't available.
> Q  Would you be surprised to hear that for 625 dollars you could purchase a Wi-Fi silent alarm from Lamprey Septic Services with auto notification to them and to emails to the Board of Directors for 625 dollars?

A  We were never told that.  Whether I'm surprised or not, I don't know if it was available at this time.  It's been a while ago, so I don't know.

It is also cumulative of the following testimony that Schaff's attorney had previously elicited from Marcucci:

Q  So they presented you a silent alarm?  So it was possible; wasn't it?
A  No, it was not possible.  This not -- this is not a silent alarm.  It's a -- it's an alarm dialer.  It doesn't say anything about silent.
Q  Would you be surprised to know that for 625 dollars you could purchase a Wi-Fi silent alarm from Lamprey Septic Services with auto notification to them and to emails to the Board of Directors for 625 dollars?
        . . . .

A  The gentleman who came out to coordinate this whole thing name was Doug.  I think his last name was Murphy; I'm not sure.  He's the one that the information was given to and the electrician was there at the same time.  And evidently, a silent alarm could -- there was -- there was no service for a silent alarm at that time; maybe there is now, but at that time, he did not -- did not give us that -- that proposal.  Lamprey did not give that proposal.

Because the testimony at issue is substantively the same as testimony that his own counsel previously elicited, Schaff has failed to demonstrate that the trial court's failure to sustain his counsel's third hearsay objection was clearly unreasonable or untenable to the prejudice of his case.  See id.

To the extent that Schaff argues that the trial court erred by relying upon testimony of Marcucci and McKinley to which his counsel did not object, we conclude that his argument is not preserved for our review.  In general, a party must make a specific and contemporaneous objection during trial to preserve an issue for appellate review.  Broughton v. Proulx, 152 N.H. 549, 552 (2005).  This requirement affords the trial court an opportunity to correct any error it may have made and is grounded in common sense and judicial economy.  Id.  Because Schaff's counsel did not object on hearsay grounds to any other testimony by Marcucci and McKinley, any argument Schaff makes on appeal as to why that testimony constitutes inadmissible hearsay is not preserved for our review.  To the extent that Schaff argues that even if not objected to, the trial court had a duty, sua sponte, not to credit Marcucci's and McKinley's testimony, we conclude that the trial court had no such duty.  The trial court was well within its discretion to credit testimony to which Schaff's counsel did not object.  See Barlow v. Verrill, 88 N.H. 25, 28 (1936) (noting that "it is established law, supported by an immense number of decisions, that hearsay

6

testimony when admitted without objection is to be considered and given its logical probative effect").

Schaff further asserts that other evidence in the record "soundly rebutted" Marcucci's and McKinley's testimony. However, resolving such conflicts in the evidence and deciding the weight to be given evidence was for the trial court to do in the first instance. See O'Malley, 170 N.H. at 275.

In addition, Schaff contends that impossibility was not available as a defense in this case because the Association "reasonably could have foreseen[,] at the time the Settlement Agreement was executed, that it would not be feasible to install either a silent septic alarm system or an audible alarm system in a tree off of [his] property." See Fuller Ford, Inc. v. Ford Motor Co., No. CIV. 00-530-B, 2001 WL 920035, at *9 (D.N.H. Aug. 6, 2001) ("Many courts have held that if the basis of a claim of impossibility is reasonably foreseeable[,] the defense will be lost because the promisor should have provided for the contingency in the contract." (quotation, brackets, and ellipsis omitted)). We decline to consider this argument because Schaff has failed to demonstrate that he preserved this argument for our review.

As the appealing party, Schaff has the burden of providing this court with a record demonstrating that he raised his appellate issues before the trial court. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). It is a long-standing rule that a party may not have judicial review of matters he did not raise in the trial court. Id. The purpose of this rule is to allow the trial court an opportunity to correct any error it might have made. See In the Matter of Mannion & Mannion, 155 N.H. 52, 54 (2007). Because the record on appeal fails to show that Schaff argued in the trial court, as he argues on appeal, that impossibility is not available to the defendants as a defense, we decline to consider it.

Finally, Schaff argues that even if impossibility were available as a defense, the Association "is still liable to [him] for the damages he incurred as a result of [the Association's] nonperformance." However, at trial, Schaff did not offer evidence of any damages sustained as a result of the alleged breach of the Agreement's septic alarm provision. Under these circumstances, we decline to consider Schaff's argument that he is entitled to consequential damages.

C.  Attorney's Fees

Ordinarily, we review a trial court's denial of an attorney's fee award under our unsustainable exercise of discretion standard. See In the Matter of Martel & Martel, 157 N.H. 53, 63 (2008). However, in this case, the trial court's denial of an attorney's fee award was based upon its interpretation of the Agreement. The interpretation of a contract presents a question of law. See Kessler v. Gleich, 161 N.H. 104, 108 (2010). Thus, we review the trial

court's interpretation of the Agreement <u>de</u> <u>novo</u>.  <u>See</u> <u>id</u>.  In interpreting the meaning of a contract, "[w]e look to the parties' intent at the time the agreement was made, considering the written agreement, all its provisions, its subject matter, the situation of the parties at the time the agreement was entered into, and the object intended."  <u>Id</u>.  "We assign the words and phrases used by the parties the common meaning that would be given to them by a reasonable person."  <u>Id</u>.  "Unless the agreement contains ambiguous terms, we limit our review to the four corners of the document itself."  <u>Id</u>.

The attorney's fee provision of the Agreement provides:

> <u>Enforcement of Settlement Agreement</u> – The Parties expressly understand that the provisions of this Settlement Agreement are enforceable by the Parties in an action at law and/or in equity, which shall only be brought in a Court of competent jurisdiction within the State of New Hampshire. . . . Costs of enforcing this Settlement Agreement, including reasonable attorneys' fees, shall be payable by the breaching party.

The trial court found that "[t]he decision to place the alarm system where the Board placed it was a change that required agreement of both parties formalized with a signed writing, which the Board did not seek."  The court determined, therefore, that "the Board breached the Agreement."  However, the court declined to award Schaff attorney's fees because it concluded that, having not ordered specific performance, it had not "enforced" the Agreement.  The court explained:

> Admittedly, the Court found that the Board breached the Agreement.  However, the Court concluded that the plaintiff was not entitled to specific performance because the breach was not material.  Specifically, the Court concluded that the breach did not defeat the Agreement's purpose—to move the noisy alarm off of Schaff's unit.  The Court did not "enforce" the Agreement despite these findings because it found that the purpose of the Agreement was not defeated by the Association's actions.  The septic alarm was moved off of the Unit, consistent with the purpose of the Agreement.  Thus, the Court concludes a fair reading of the Agreement shows that [the attorney's fee provision] contemplates material breaches, or breaches that would be remedied by specific performance.

We disagree with the trial court's interpretation.  In context, the verb "enforce" as used in the attorney's fee provision does not refer to specific performance, but rather refers to a party's "action at law and/or in equity" brought in a New Hampshire court "of competent jurisdiction."  Had the parties intended the verb to refer only to equitable remedies, such as specific

8

performance, they would not have specified that the Agreement was "enforceable by the Parties in an action at law and/or in equity."

Nor does the provision require that a breach be material before reasonable attorney's fees are awarded. The provision merely provides that such fees are to be awarded upon a finding that the other party breached the Agreement and includes no language requiring that the breach be material.

Here, although the trial court declined to order specific performance, the court did find that the defendants breached the Agreement by failing to obtain Schaff's written consent before relocating the audible alarm from the outside back wall of his porch to the wooden board more than 20 feet away from his unit.[1] Because no party has challenged that finding on appeal, we accept it. Under the plain meaning of the attorney's fee provision, therefore, having found that the defendants breached the Agreement, the trial court erred by not awarding Schaff nominal damages and reasonable attorney's fees. See Pugliese v. Town of Northwood, 119 N.H. 743, 751 (1979) (explaining that nominal damages "are recoverable whenever there has been a breach of a legal duty or invasion of a legal right and no actual damage resulted or was proved"); see also King v. Brock, 646 S.E.2d 206, 207 (Ga. 2007) (noting that "a majority of jurisdictions hold that a party who recovers nominal damages is entitled to attorney fees and expenses as a 'prevailing party'"). Accordingly, we reverse the trial court's denial of Schaff's request for such fees, and remand for further proceedings consistent with this order.

D. Schaff's Remaining Arguments

Schaff contends that the record does not support the trial court's findings that, although the Board originally sent him an invoice for one-half of the cost of relocating the septic alarm, the Board did not attempt to collect on the invoice and later rescinded it. However, these findings are supported by the testimony of Marcucci and McKinley. Marcucci, who serves as the Association's treasurer, acknowledged that the invoice had been sent to Schaff, but testified that the Association had paid the contractors "up front," and that the Board subsequently decided not to seek reimbursement from Schaff for the cost of relocating the septic alarm. McKinley confirmed that the Board had no intention "in the future or at any time after this hearing to attempt to collect that [money] from Mr. Schaff."

Schaff raises two additional arguments. First, he appears to contend that when the Association moved the septic alarm control box from underneath his porch to the outside back wall of his porch it lacked authority to do so pursuant to the condominium instruments. This argument may be encompassed in paragraphs 80-85 of the 2016 complaint.

---

[1] Had such assent been sought, it likely would have avoided further litigation on this issue.

9

Second, Schaff argues that the Association and the Board breached their fiduciary duties by falsely recording the vote at the 2014 annual meeting. This argument may be encompassed in paragraphs 91-94 of the 2016 complaint.

We express no opinion as to either argument. On remand, the trial court shall decide, in the first instance, whether these claims were properly raised in the motion to reopen, and if so, shall conduct further proceedings as necessary to decide them.

<u>Affirmed in part; reversed in part; and remanded</u>.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**